UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

THE CHARTER OAK FIRE INSURANCE
COMPANY,

                                Plaintiff,

                - against -

THE HANOVER INSURANCE COMPANY,

                            Defendant.

-------------------------------------------------------- X

**MEMORANDUM DECISION AND
ORDER**

21-cv-4216 (BMC)

**COGAN**, District Judge.

      This is an insurance coverage dispute in which plaintiff The Charter Oak Fire Insurance

Company[1] ("Charter Oak") claims that its insured, Holt Construction Corp. ("Holt"), also had

coverage as an additional insured under a policy issued by defendant, The Hanover Insurance

Company ("Hanover"), to Hanover's primary insured, Lafayette Glass Company ("Lafayette").

There is no dispute that if Holt had such additional insured coverage under the Hanover policy,

then Hanover provides Holt's primary coverage, and Charter Oak's coverage becomes only

excess or secondary.  This case arises out of a state court slip-and-fall case (the "James Action")

against both Holt and Lafayette, in which the state court determined, subsequent to

commencement of the instant case, that Lafayette had no fault in causing James's injury.

      The case is before me on the parties' cross-motions for summary judgment.  Charter Oak

seeks a declaration that Hanover had a duty to defend Holt in the James Action.  Hanover seeks a

---

[1] Charter Oaks is apparently a subsidiary of The Travelers Insurance Company, but the parties have used them
interchangeably, so I will too.

declaration that it had neither a duty to defend nor a duty to indemnify Holt.  I hold that Hanover had a duty to defend Holt from the date on which Hanover had notice that there was a reasonable possibility that Holt would qualify as an additional insured under the Hanover policy until the date that Lafayette was finally exonerated in the James Action.  I do not reach Hanover's request for a declaration as to indemnification either as a matter of discretion or because it does not present a case or controversy.

## BACKGROUND

### I.     The James Action

James's accident occurred on May 1, 2017 when she was working at the American Airlines Admirals Club at JFK Airport. Her initial complaint, filed in state court on March 26, 2018, named Holt as the only defendant.  Holt was the general contractor to American Airlines for a construction project in the club.  Holt, in turn, had engaged Lafayette as a subcontractor to install metal and glass partitions at the construction site.  And Lafayette, in turn, had engaged a company called Architectural Entrance Systems, Inc. ("AES") for the purpose of installing the kind of sliding doors that open and close automatically.  It was AES that had installed the particular glass sliding door, or at least the metal track to hold it, on which James had tripped and fallen.

Holt therefore impleaded both Lafayette and AES for contribution or indemnification on August 24, 2018, and James added those two parties as additional defendants in an amended complaint on November 9, 2018.  In Holt's third-party complaint, it alleged that Lafayette was liable not only for contribution, but for common law and contractual indemnification.

Under the terms of the subcontract between Holt and Lafayette, Lafayette was obligated to name Holt as an additional insured in any liability insurance policy Lafayette obtained. However, as is common in such policies, the additional insured coverage is triggered only if the injury occurred through Lafayette's acts or omissions or of those acting on its behalf.  In other words, it appears that this coverage gave Holt protection as an additional insured against vicarious or contractual liability of Lafayette that was then passed through to Holt, but not negligence for which Lafayette had neither primary nor vicarious liability.

The evidence in the James Action showed that Lafayette had no workers present when the structure on which James tripped was installed, and, under its contracts with Holt and AES, it was Holt, not Lafayette, that was charged with supervising AES.  Moreover, the evidence showed that after AES installed the track on which James had tripped, Holt ordered AES to stop working on it so that other contractors could work in the area.

Accordingly, when the case came up for summary judgment in state court, the motions court dismissed James's claim against Lafayette and AES and Holt's third-party claim against those two parties, essentially finding as a matter of law that the accident was Holt's fault.  The court held that neither James nor Holt had raised an issue of fact as to Lafayette's liability, and that AES was an independent contractor responsible directly to Holt, not Lafayette.  It further held that AES had no liability because Holt had ordered AES offsite and thereby taken responsibility itself for the safety of the area.

Both James and Holt appealed the decision. James never perfected her appeal, and Holt perfected its appeal on September 2, 2021.  The James Action was dismissed, and the appeals were withdrawn by stipulations between James, Holt, Lafayette, and AES on or about January 14, 2022, while the cross-motions for summary judgment in the instant case were *sub judice*.

**B.  The Notice of Claim to Lafayette and Hanover**

On June 16, 2017 (about nine months prior to the commencement of the James Action),

Charter Oak (through Travelers) sent a tender of defense letter to Hanover.  It noted that

Lafayette was a subcontractor to Holt at the site; that the subcontract required Lafayette to name

Holt as an additional insured; that James had tripped and fallen "over a door frame being worked

on by" Lafayette; and that James "sustained injuries" and "is being represented by The Noll Law

Firm, P.C."  It enclosed the Holt/Lafayette subcontract; Lafayette's Certificate of Liability

Insurance; and a "letter of representation," apparently between James and her lawyers.[2]  It

asserted that Hanover had a duty to defend and indemnify Holt (among others connected with the

project), as additional insureds, and requested acceptance of that obligation, including any

expenses from the date Charter Oak had received notice of the loss until that acceptance.

On July 21, 2017, Hanover rejected the tender on various grounds. As relevant here, the

rejection letter stated that Lafayette "had not started work at JFK until May 3, 2017 and they do

not install door frames for doors, they only install glass doors."  The letter also stated that the

two allegedly negligent workers did not work for Lafayette (they apparently worked for AES).

Because Lafayette had not done the work in question, the letter stated, "the Additional Insurance

clause of the cited endorsement is not triggered and Hanover will be unable to provide AI

coverage on behalf of Holt Construction Corp."

Charter Oak made another tender to Hanover on February 14, 2020, about two years after

commencement of the James Action.  It was essentially the same as its initial tender, and

Hanover's denial, on March 11, 2020, was also on the same grounds as its prior denial.

---

[2] The letter of representation is not included in the record before me, but it is referenced in Charter Oak's June 16, 2017 letter.

Finally, on March 11, 2021 (after the motions court had granted summary judgment dismissing James's and Holt's claims against Lafayette), Charter Oak tendered to Hanover again. Charter Oak's theory may have been somewhat different, or at least more detailed.  Its letter said that because the work that AES had performed was within the scope of work that Lafayette had agreed to perform for Holt, and it was Lafayette, not Holt, that had contracted that work out to AES, Holt was entitled to additional insured coverage – at least for the costs of defense. On April 1, 2021, Hanover rejected this final tender.  Hanover had a newly-acquired ability to rely on the motions court's summary judgment decision, and it did: since the motions court had found that neither Lafayette nor AES were negligent – only Holt – additional insured coverage was not activated.

## DISCUSSION

### I.      Duty to Defend

A basic principle of insurance law shows why Charter Oak is right about the duty to defend and Hanover is wrong: the duty to defend does not arise from an ultimate determination of the liability between the insured (or additional insured) and the insurer.  It is neither necessary for an insured, nor permissible for an insurer, to undertake a thorough examination of all the details underlying an accident before determining whether coverage obtains.  Rather, coverage is triggered when "the allegations of the complaint suggest a reasonable possibility of coverage." Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 179 (2006) (cleaned up).  The duty to defend is triggered "no matter how groundless, false or baseless the suit might be."  Id.  "An insurer may refuse to defend '*only if* it can be concluded as a matter of law that there is *no possible* factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'"  Charter

Oak Fire Ins. Co. v. Zurich Am. Ins. Co., 462 F. Supp. 3d 317, 323 (S.D.N.Y. 2020) (quoting CGS Indus., Inc. v. Charter Oak Ins. Co., 720 F. 3d 71, 82 (2d Cir. 2013)).  "[A]scertaining the duty to defend is not confined to the face of the complaint, although that is often the sole or primary source.  But the inquiry can also include whether the insurer 'has knowledge of facts which potentially bring the claim within the policy's indemnity coverage.'"  Travelers Ins. Co. v. Harleysville Ins. Co., No. 22-cv-6032, 2023 WL 7621992, at *3 (E.D.N.Y. Nov. 14, 2023) (quoting Fitzpatrick v. Am. Honda Motor, 78 N.Y.2d 61, 66-67, 571 N.Y.S.2d 672, 674-75 (1991)).

The reason for – and importance of – this principle is obvious.  If all of the facts about an accident had to be determined with some level of certainty before an insured could receive its defense, then the value of the defense would be substantially diminished, and indeed, in the case of a small business or an individual, a defense might not even be affordable.  Admittedly, that concern is less pressing in a case like this, where the issue is additional insurance coverage for a general contractor that has its own primary coverage and contracts for significant jobs.  But New York courts have not differentiated in the defense obligation depending on the ability of the putative insured to advance the costs for its own defense.  If there is a reasonable possibility of coverage, or, stated otherwise, a colorable claim for coverage, then the defense obligation arises.

For this reason, Hanover's attempt in the instant case to finely parse the evidence in the James Action, as it did in its motion for summary judgment in that action, misses the point.  The issue of the duty to defend is only tangentially related to the issue before the motions court, the latter being whether the negligence of Lafayette or its arguable agent, AES, contributed to James's injury.  Rather, the issue is whether James or Holt had a viable theory that Lafayette could be liable for James's injury.

Charter Oak and Hanover knew more than sufficient facts to show the viability of a claim for negligence against Lafayette.  Lafayette had the obligation to perform the glass panel work at the Admirals Club under its subcontract with Holt.  Lafayette located and engaged AES for the sub-subcontract to install the particular glass panel, the track of which was the alleged cause of plaintiff's injury.  And both James's amended complaint and Holt's third-party complaint expressly alleged the negligence of Lafayette and AES for the injury.  The fact that Lafayette ultimately attempted to shift the blame for the negligence onto AES or Holt, and, as the motions court found, was successful with respect to Holt (through the use of extensive deposition testimony and work records developed over time in the James Action), does not bear on Hanover's duty to defend *ab initio*.

I think Charter Oak had it precisely right when, in its letter to Hanover of March 11, 2021, it stated that: "While that summary judgment [decision of the motions court] may impact Hanover's duty to defend Holt going forward and may absolve Hanover of any duty to indemnify, it does not impact Hanover's obligation to defend Holt from the date of tender until the date summary judgment was entered."  Hanover's theory, in contrast, would effectively merge the broad duty to defend with the much narrower duty to indemnify.  But they are two different obligations, and whether they exist depends on two different tests.  See U.S. Fidelity and Guaranty Co. v. Fendi Adele S.R.L., 823 F.3d 146, 150 (2d Cir. 2016).

The remaining question, then, is when Hanover's duty to defend arose and when it ended. The three potential start dates are: (1) Charter Oak's initial tender letter of June 16, 2017, nine months before commencement of the James Action; (2) the commencement of the James Action on March 26, 2018; or (3) the second tender of the defense, about two years after commencement of the James Action, on February 14, 2020.

7

The June 16, 2017 tender letter was not an actual tender of Holt's defense.  At that time, there was no lawsuit pending – there wouldn't be for another nine months – and thus nothing to defend.  At most, it gave Hanover notice that there might be a lawsuit, and, if one was filed, Charter Oak expected that Holt would be entitled to additional insured coverage.  But, of course, sometimes threatened lawsuits aren't actually filed.  Therefore, unless and until there was a complaint filed in state court, Hanover had neither the obligation nor even the ability to ascertain whether Holt had coverage.  This was because Hanover could not review the four corners of a complaint to ascertain its defense obligation.  Although ascertainment of the duty to defend may go beyond the four corners of the complaint, Charter Oak has cited no case where a complaint was not filed until many months after the alleged tender, and indeed might never have been filed at all, and indeed the duty to defend arose despite the absence of a complaint.

Since the June 16, 2017 letter was not an effective tender, it remained incumbent upon Charter Oak to make one once the James Action was filed on March 26, 2018, or within a reasonable time thereafter.  This is because Charter Oak's June 16, 2017 ineffective tender cannot have operated in perpetuity in the event James ever decided to file an action naming Holt.  Yet for reasons unexplained, Charter Oak didn't make a tender until February 14, 2020.  It was only then that Hanover had notice of the claim together with a demand for defense and indemnification.  That is when its duty to defend arose.

The date when the duty to defend ended, on the other hand, is more complicated.  Charter Oak contends that it continued until January 13, 2022, the date on which James, Holt, Lafayette, and AES stipulated to dismiss and withdraw the appeal in the James Action.  According to Charter Oak, that was the date when James's and Holt's claims against Lafayette were finally

resolved and determined "with certainty." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001) (emphasis omitted).

Hanover, however, examines the issues that might have been raised on appeal, and concludes that none of those issues would have impugned the motions court's summary judgment decision that Lafayette was not negligent, and if Lafayette was not negligent, then Holt could not have additional insured coverage. Hanover points to the fact that on appeal, Holt challenged only the motions court's dismissal of Holt's claim against Lafayette for contractual indemnification.[3] Holt did not challenge the motions court's conclusion that Lafayette bore no active negligence or responsibility for James's injury. And as to James's appeal, she only sought to put in a response to Holt's appeal, not to raise any additional issues of her own.

My conclusion is that Holt's argument in this case takes us beyond the land of the "reasonable possibility" of coverage that would be necessary to continue Hanover's duty to defend. For Holt to be entitled to coverage for defense once it filed its brief, the Appellate Division would have had to first reverse the motions court on at least two findings that Holt raised on appeal, namely: (1) that AES was not negligent because Holt itself had superseded any negligent acts on AES's part by Holt's own negligence in setting the conditions that caused James's injury (i.e., ordering AES to vacate the area so that other contractors could work there), and (2) that Lafayette was not responsible for AES's negligence because AES was an independent contractor answerable only to Holt. But even if the Appellate Division did that, it would not get us to a continuation of the duty to defend. Some other court, possibly this one, would have to conclude that not only did Lafayette breach the subcontract (as the Appellate

---

[3] Holt also challenged the motions court's finding that Holt was negligent.

Division would have to have hypothetically found), but that Lafayette was actively negligent or vicariously liable for AES's conduct in bringing about James's injury – an issue that that Holt did not directly raise on appeal.

Holt could have preserved its position by arguing, in addition to the contractual claims it raised on appeal, that the motions court erred in finding that Lafayette was not contributorily negligent in its own right. It didn't do that, perhaps because the record to support this argument did not exist. But a "reasonable possibility" of coverage does not mean "any" possibility of coverage, no matter how farfetched, and the fact that an Appellate Division reversal might have included something that Charter Oak could use for its coverage argument is insufficient to create a reasonable possibility. Stated otherwise, because we are here considering not the existence of a duty to defend, but the date on which the duty ended, there is a much fuller record and that record does not show reasonable possibility of coverage.

We are faced with a very clear decision of the motions court that, if final, would end the duty to defend. It was not final because Holt (and potentially James) appealed it. But once James abandoned that appeal, and once Holt, presumably with Charter Oak's knowledge or consent, agreed to jettison any argument about Lafayette's alleged negligence and rely solely on a breach of contract claim under the provisions of the subcontract, the duty to defend ended.

## II.    Duty to Indemnify

For a court to issue a declaratory judgment, there must be "a case of actual controversy." 28 U.S.C. § 2201(a). The dispute between the parties must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, Inc. v.

Genentech, Inc., 549 U.S. 118, 127 (2007) (cleaned up); see also Nike, Inc. v. Already, LLC, 663 F.3d 89, 95-96 (2d Cir. 2011), aff'd, Already, LLC v. Nike, Inc., 568 U.S. 85 (2013).  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Nike, 663 F.3d at 95 (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

Even where a sufficient case or controversy exists for purposes of declaratory judgment relief, a district court retains the discretion to decline to issue a declaratory judgment concerning that claim.  The Second Circuit has recently held, in determining whether to decline to issue a declaration, that a court should consider various factors, including but not limited to

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 99-100 (2d Cir. 2023) (cleaned up).

In the instant case, there is no question that, as to the duty to defend, there is a live controversy before this Court that needed to be addressed through a declaration, and I have therefore discussed that issue above.  Charter Oak funded the defense of Holt in the James Action and is seeking reimbursement for those defense costs from Hanover now that the James Action has concluded.  Indeed, Charter Oak probably could have filed an amended complaint in this action once the James Action stipulations were filed that included a request for damages, but even in an insurance case, there is no reason to be hyper-technical.

That is not the case with the duty to indemnify.  Although Charter Oak, in its tender letters in the James Action and its complaint in this action, demanded indemnification as well as defense in the James Action, Charter Oak arrived at its position prior to the motions court's disposition of the James Action, the dismissal of that case, and this Court's decision on the duty to defend set forth above.  Notably, Charter Oak's motion for summary judgment sought relief only as to the duty to defend, apparently recognizing that, at the very least, there were issues of fact that were being litigated in the James Action that had to be resolved prior to the determination of the duty to indemnify.  Those issues have now been resolved there, adversely to Charter Oak's insured.  As Charter Oak acknowledged in its March 11, 2021 tender letter, the motions court's decision in favor of Lafayette "may absolve Hanover of any duty to indemnify."  Add to that the dismissal the James Action, and I see no reason for this Court to put the nail in the coffin on that issue.

In short, the procedural posture of the case suggests either that there is no longer a case or controversy with regard to a possible duty to indemnify, or if there is, that this Court should exercise its discretion to refrain from resolving it.  Accordingly, the Court will not reach that issue.

## CONCLUSION

Each party's motion for summary judgment is granted in part and denied in part.  The Court will enter a judgment pursuant to Rule 58(a) declaring that Hanover is obligated to

indemnify Holt for the reasonable costs of defending the James Action incurred from February

14, 2020 through September 2, 2021.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
     February 10, 2024